# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

CASE No. 10-2193 (JRT/TNL)

CARLOS SMITH,

                Plaintiff,

**REPORT
&
RECOMMENDATION**

v.

TOM ROY, et al.,

                Defendants.

Carlos Smith, pro se; and

Margaret Jacot, Assistant Attorney General, on behalf of Defendants Roy, Fabian, McComb, Alexander, Perez, Lind, McCoy, King and Reishus.

This matter is before the undersigned United States Magistrate Judge on Defendants Roy,[1] McComb, Alexander, Perez, Lind, McCoy, King and Reishus' ("Defendants") motion to dismiss and for summary judgment (Doc. No. 38). The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, **IT IS HEREBY**

---

[1] As discussed in Section II.C. of this Report and Recommendation, Smith sued the defendants in their official capacities only. Defendant Joan Fabian is no longer the Commissioner of the Minnesota Department of Corrections. *See* http://www.doc.state.mn.us/org/commissioneroffice/commoffice.htm. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer sued in an official capacity who ceases to hold office while an action is pending should be substituted with the officer's successor. The Court recommends substituting Tom Roy, the current Commissioner of the Minnesota Department of Corrections, for Joan Fabian.

**RECOMMENDED** that all claims against Defendants Eric Skon, Lynn Dingle, Joseph Cosgrove, James Benson, and Helene Haworth be dismissed without prejudice and the remaining Defendants' motion for summary judgment be granted (Doc. No. 38).

## I.    FACTUAL BACKGROUND

Plaintiff Carlos Smith ("Smith"), a prisoner incarcerated at the Minnesota Correctional Facility at Stillwater ("MCF-STW")[2] brings this lawsuit under 42 U.S.C. § 1983, alleging First and Fourteenth Amendment constitutional violations regarding Minnesota Department of Corrections ("MN-DOC") Contraband Policy 301.030 and Mail Policy 302.020.   Smith filed this case as a putative class action, but class certification was denied.[3]   Discovery has been completed, and Smith was given the opportunity to respond to Defendants' motion to dismiss and for summary judgment but did not do so.[4]

Defendants move to dismiss and for summary judgment for the reasons as follows: (1) official capacity claims for damages are barred by the Eleventh Amendment; (2) alternatively, damages for psychological or emotional suffering are not available under the Prison Litigation Reform Act ("PLRA"); (3) alternatively, liability for damages under Section 1983 is not available without showing personal involvement of defendants; (4)

---

[2]    Affidavit of John Hillyard, Doc. No. 42, ("Hillyard Aff."), Ex. B.

[3]    *See* Order and Memorandum (Doc. No. 19.)

[4]    *See* Order Opinion (Doc. No. 53). This Court notes, however, that Smith submitted a response to Defendants' Answer, and the Court will consider that response and the exhibits attached to it. (Plaintiff's Response to Defendant's Motion to Dismiss ("Pl's Resp.", Doc. No. 13.)

alternatively, defendants are entitled to qualified immunity for damages claims; (5) on claims for declaratory and injunctive relief, Smith has standing only for the five denials of mail delivery he identified in discovery; (6) Smith's "as-applied" challenge to denial of magazines and photographs under the First Amendment should be dismissed because Smith did not provide sufficient detail for the Court to determine whether the contraband policy was properly applied; (7) the DOC definition of nudity and prohibition on sexually explicit materials is facially valid under the First Amendment; (8) the DOC policies regarding Security Threat Group ("STG")[5] paraphernalia and single issues of magazines are facially valid under the First Amendment; (9) Smith failed to state an equal protection claim under the Fourteenth Amendment; and (10) Smith failed to state a due process claim under the Fourteenth Amendment.

A.    **MCF-STW's Mail Policies.**

MN-DOC Policy No. 301.030 sets forth the definitions and procedures relating to contraband and MN-DOC Policy No. 302.020 states that "[i]ncoming and outgoing mail, in whole or in part, is not authorized if it . . . contains contraband or pertains to sending contraband into or out of the facility."  (Pl's Resp., Ex B19 and B20, pp. 43-44, 48-49.) In 2004, MN-DOC amended the section of its contraband policy regarding sexually

---

[5]    Security Threat Group or STG is a term that MN-DOC uses to refer to gangs (Ex. E (MN-DOC Policy 301.111 Security Threat Groups).

explicit materials and nudity.  (Affidavit of Mary McComb, Doc. No. 44, ("McComb

Aff.") &&5-7.)[6]  MN-DOC Policy 301.030 defines sexually explicit materials as:

> (1)  all materials that contain pictorial depictions of sexual
> activity;
> (2)  published materials featuring nudity or written depictions
> of sexual activity, unless such depictions illustrate medical,
> educational, or anthropological content;
> (3)  non-published materials that contain pictorial depictions
> of nudity (including but not limited to pictures, photographs,
> internet printings, and drawings); and
> (4)  non-published materials containing written depictions of
> sexual activity that, based on an individualized review, are
> determined to constitute a risk to the safety and security of the
> facility, facilitate criminal activity, or undermine offender
> rehabilitation; but
> (5) excluding materials issued by facility treatment staff to an
> offender currently participating in a sex offender treatment
> program.

(McComb Aff. &5, Ex. A.)  Nudity is defined as:

> the showing (including a see-through covering) of human
> male or female genitals, anus or pubic area or the showing
> (including a see-through covering) of the female breast or a
> substantial portion of the breast below the top of the nipple.
> Examples of see-through coverings that are not permitted
> include "pasties," lace, mesh, and body paint through which
> the covered area is showing.

(*Id.*)  Any single photograph containing nudity is contraband.  (*Id.* &9.)  Publications

generally are only contraband if they "feature" nudity.  (*Id.*)  A publication "features"

---

[6]      Because no significant changes were made to these sections of the MN-DOC
policy after 2004, the Court will cite to the version of MN-DOC Policy 301.030, effective
July 6, 2010, as provided in Ex. A to the Affidavit of Mary McComb (McComb Aff.
&5.), and by Smith (Pl's Resp., Ex. B20, p. 48.)

nudity when it contains nudity on a routine basis, or promotes itself based upon such a depiction.  (*Id.*)

Published written descriptions of sexual activity are considered contraband when the publication's main subject matter is sexual in nature, and most, if not all of the content contains repeated and lengthy descriptions of sexual activity.  (*Id.* &11.)  Written descriptions of sexual activity in personal correspondence are only considered contraband if they constitute a risk to the safety and security of the facility, undermine offender rehabilitation, or facilitate criminal activity.  (*Id.*)  Examples of such include letters involving rape or violence or sexual letters to minors.  (*Id.*)

STG paraphernalia is contraband if it signifies gang affiliation.  (*Id.* & 21, Ex. E (MN-DOC Policy 301.110 *Security Threat Groups*)).  Contraband items constituting STG paraphernalia include magazines, pictures, posters, clothing and symbols.  (*Id.*)

In his Complaint, Smith did not identify any specific instances where he was denied delivery of magazines, books, letters, photographs or STG paraphernalia.  In his response to Defendants' Answer and in discovery, Smith identified being denied delivery of the magazines *King*, *Smooth*, and *Smooth Girl*, for which he had subscriptions, but he did not identify the specific dates of denials or any specific issues of the magazines.  (Pl's Resp., Ex. B16, p. 20; Affidavit of Margaret Jacot, Doc. No. 41 ("Jacot Aff."), Ex. B, p. 3.)  The DOC only maintains records of the denial of mail for one year, and it does not have any record of denying Smith these magazines during the last year.  (Affidavit of Mary Perez, Doc. No. 45 ("Perez Aff."), &&4, 6.)

In discovery, Smith also stated that he ordered photographs from an Internet website in 2007, and he was denied delivery of some of the photographs.  (Jacot Aff., Ex. B, p. 3).  Because the alleged denial occurred more than a year ago, the DOC does not have any records regarding the denial.  (Perez Aff. & 10.)  Smith also established that he was denied delivery of the book ADDICTED by Zane.  (Jacot Aff., Ex. B, p. 3.)  DOC records reveal that Barnes and Noble shipped this book to Smith at MCF-STW in December 2006, and a MCF-STW staff member reviewed the book and denied delivery to Smith because the book contained sexually explicit material.  (Hillyard Aff. &4, Ex. C and D.)  The theme of the book is the sexual exploits of its main character.  (McComb Aff. &29, Ex. I.)  When Smith appealed denial of delivery of the book, the denial was upheld.  (*Id.*)

### B.    MCF-STW's Appeal Procedures for Denial of Delivery of Items Determined to be Contraband

When an inmate is denied delivery of a book containing contraband in the form of sexually explicit material, the inmate is notified of receipt of the book, and that it will not be delivered.  (Hillyard Aff. &4, Ex. C and D.)  The inmate can appeal to the supervisor of the property unit, and to the Allowable Items Committee, as Smith did here.  (*Id.*)  When the item that is determined to be contraband and denied delivery is a photograph, the inmate is notified of the denial and may appeal by sending correspondence to the mailroom supervisor or another designated staff member.  (Perez Aff. &10.)  An inmate can appeal the decision of the mailroom supervisor to the facility's Correspondence Review Authority.  (*Id.*)

Smith also challenges the DOC's magazine denial appeal procedure but cannot identify when he was denied delivery of certain magazines. Because Smith raises a facial challenge to the appeal procedure and asks for declaratory and injunctive relief, this Court notes that the DOC recently amended the policy for review and denial of magazines containing contraband. (McComb Aff. &17, Ex. D (MN-DOC Policy 302.020)). As of August 23, 2011, a centralized publication authority reviews every issue of every magazine and determines whether incoming magazines contain contraband. (*Id.* &&14-15 and Ex. D.) The publication authority creates a list of approved and denied magazines and circulates it to the DOC facilities. (*Id.*) If a facility receives a magazine that is not on the list, mailroom staff determines whether to approve or deny the magazine. (*Id.* &16.) When the facility withholds a magazine that was determined to contain contraband, the inmate is notified of the denial of delivery. (*Id.* &&15-16.) The inmate may appeal to the Assistant Commissioner of Facility Services or another designee who is not involved in the initial decision to deny the magazine. (*Id.*)

## II.   DISCUSSION

### A.   Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . ., rather than facts that are merely consistent with such a right." *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir 2009) (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)). The factual allegations need not be detailed or specifically describe the evidence to be presented, but the allegations must be

sufficient to provide the grounds on which the claim rests.  (*Id.*)  When considering the motion to dismiss, the court construes the pleading in the light most favorable to the nonmoving party, and assumes the facts alleged are true.  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011).

Defendants have also moved for summary judgment and submitted a number of affidavits and exhibits in support of their motion.  Summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court must view the evidence, and the inferences to be drawn from the underlying facts, in the light most favorable to the nonmoving party.  *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  If a party fails to address another party's assertion of fact as required, the court may consider the fact undisputed for purposes of the motion and grant summary judgment if appropriate.  Fed. R. Civ. P. 56(e).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (quoting *First Nat. Bank of Ariz. v. Cities Service*, 391 U.S. 253, 289 (1968)).

### B.    Service of Process

The Court's review of the record indicates that the summons and complaint have not been served on Defendants Skon, Dingle, Cosgrove, Benson and Haworth, and none of these defendants have made an appearance in this case.[7]  Pursuant to Federal Rule of Civil Procedure 4(m), a defendant must be dismissed without prejudice if the defendant has not been served within 120 days after the complaint was filed.  Therefore, this Court recommends that Defendants Skon, Dingle, Cosgrove, Benson and Haworth be dismissed without prejudice.  This Report and Recommendation constitutes notice to Smith of the dismissal, and Smith has the opportunity to show good cause for the failure to serve these defendants by filing objections to the District Judge, in conformance with the notice at the end of this Report and Recommendation.

### C.    Official Capacity Claims and the Eleventh Amendment

Public officials may be sued for constitutional violations in their official and/or individual capacities.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  In the Complaint, Smith did not identify the capacity upon which he sued each defendant.[8]  If a Plaintiff wants to sue a public official in his or her individual capacity,

---

[7]    Under Federal Rule of Civil Procedure 4(l), plaintiffs must file a proof of service establishing when and how the summons and complaint were served on each defendant.

[8]    In his Response to Defendants' Answer, Smith stated he sued Defendants in their individual and official capacities; however, his Complaint does not reflect such, and

he or she must do so expressly in the complaint; otherwise, the Court assumes the plaintiff sued the defendants in their official capacities.  *Id.*  "Official capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision."  *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

"A suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson*, 172 F.3d at 535.  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   Thus, the Eleventh Amendment creates a jurisdictional limit on federal courts in civil rights cases against States and their employees.  *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997).   A State can waive its immunity or Congress can invoke its power under Section 5 of the Fourteenth Amendment to override the immunity.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).  Congress, in enacting Section 1983, did not disturb Eleventh Amendment immunity.  *Id.*

Because the complaint is construed to contain only official capacity claims, Smith's claims for damages against each remaining defendant are barred by the Eleventh Amendment.  The Court need not address Defendants' alternative arguments to dismiss Smith's damages claims based on the PLRA, lack of personal involvement or qualified

---

Smith's motions to amend the complaint were denied.  (Complaint; Pl's Resp., Doc. No. 13, &6(d); and Order Opinion, Doc. No. 53, p. 2-4.)

immunity.  "A state agent, however, may be sued in his official capacity if the plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim."  *Nix*, 879 F.2d at 432-33 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989) (official-capacity actions for prospective relief are not treated as actions against the state)).  In addition to damages, Smith seeks declaratory and injunctive relief for alleged constitutional violations.  These claims are addressed below.

### D.      Standing for Declaratory and Injunctive Relief Claims

> [A] suit against a state official may go forward in the limited circumstances identified in the Supreme Court in Ex Parte Young.  Under the Ex Parte Young doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law.  In determining whether this section applies, a court conducts "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.  Verizon Maryland Inc., v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (alteration in original) (internal quotation omitted).

*281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  Similarly, in seeking declaratory relief, "a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant."  *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam)).

For Smith to have standing, he must first demonstrate that he suffered an injury in fact, that the injury was caused by the Defendants, and that his injury is likely to be redressed by a favorable ruling from the court.  *Park v. Forest Service of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  Where the remedy requested is injunctive relief, "the 'injury

in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing

or future harm. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05 (1983).

> "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury' [is] "certainly impending.""" Friends of the Earth v. Laidlaw Environmental Services, Inc., 528 U.S. 167, ----, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000), quoting Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), itself quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923), *reaff'd*, 263 U.S. 350, 44 S.Ct. 123, 67 L.Ed. 1144 (1923).

*Id.* (alteration in original).   Past exposure to illegal conduct alone does not establish a

present case or controversy regarding injunctive relief unless accompanied by

"continuing, present adverse effects."   *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488,

495-96 (1974).   In other words, the plaintiff must demonstrate "a real and immediate

threat that [he] would again suffer similar injury in the future."   *Id.* (internal quotations

omitted).   For declaratory relief, a plaintiff must assert a claim that, if granted, would

affect the behavior of the defendant[s] toward the plaintiff.   *Rhodes v. Stewart*, 488 U.S.

1, 4 (1988) (per curiam).

Because the MN-DOC policy is still in effect, Smith would likely be denied

similar magazines, photographs or books he orders.   The specific instances when Smith

was denied delivery establish an injury in fact, caused by the Defendants (in their official

capacities), which could be redressable by prospective injunctive relief, if a challenge to

the MN-DOC policies were successful.   In such a scenario, the Court could order

Defendants to cease enforcement of the definitions of nudity and sexually explicit

materials in MN-DOC Policy 301.030, and Smith would no longer be denied delivery of materials that were prohibited under the policy.

There are exceptions to Smith's standing to bring his challenges to MN-DOC policies.  MN-DOC revised its appeal procedure regarding magazine review and appeals. (McComb Aff. &17, Ex. D).   Smith has not alleged an injury under the new procedure, and the Court can no longer order Defendants to cease enforcement of a procedure it no longer uses.   Declaratory relief regarding the former appeal procedure for magazines would not affect the behavior of defendants toward Smith.   Therefore, Smith lacks standing on this claim for declaratory judgment and prospective relief.   Furthermore, Smith did not allege an injury in fact on his claims regarding STG paraphernalia, single issue magazines or personal letters or photos from his wife or girlfriend, because he did not allege a particular instance when he was personally denied delivery of any such items under MN-DOC's policy, only that other plaintiffs in the putative class suffered such an injury.  Class certification, however, was denied. *See* supra n. 3.  Smith lacks standing on these claims as well.

### E.     Whether Smith stated a claim that the contraband policy was vague or overbroad.

In his Complaint, Smith alleges:

> The Plaintiffs' 1st Amendment Right has been subject to infringement by the MN-DOC and the specifically named defendants due to the implementation and enforcement of MN-DOC policy no. 301.030 "Contraband", in that it is vague, overbroad and unnecessarily sweeping in its definition of nudity, in that magazine and personal photographs of African American women (and other racial ethnic minority

groups) ***wearing swimsuits or lingerie*** are classified as "Nudity" and denied delivery to prisoners.

(Complaint, Doc. No. 1, &2, p. 8.)  "A statute is unconstitutionally vague if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'"  *U.S. v. Posters N Things Ltd.*, 969 F.2d 652, 659 (8th Cir. 1992) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)).  Smith has not explained how the policy would require one to guess at its meaning, other than to suggest wearing a swimsuit or lingerie is not consistent with the concept of nudity.  The MN-DOC definition of nudity, however, expressly includes see-through coverings that expose genitals, the pubic area, the anus, the female breast or a substantial portion of the breast below the nipple.  The regulation is not vague because a person of common intelligence would understand that see-through swimsuits or lingerie would fall within this definition.

Smith also challenges the definition of nudity as overbroad and unnecessarily sweeping.  He did not explain this allegation beyond suggesting that a definition of nudity which would encompass a person wearing a swimsuit or lingerie is overbroad.  "A statute is overbroad in constitutional terms if it comprehends a substantial range of applications to activity protected by the First Amendment, in addition to the unprotected activities it legitimately prohibits."  *Turchick v. U.S.*, 561 F.2d 719, 721 (8th Cir. 1977).  In this case, then, the statute is overbroad if receiving magazines and photographs of women wearing a swimsuit or lingerie is protected by the First Amendment and only magazines or photographs showing nudity are legitimately prohibited by the regulation.  Courts review claims that a prison regulation is overbroad under the factors enumerated

in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  For the reasons discussed in Section F below, this Court finds that MN-DOC's definition of nudity is facially valid under the First Amendment.

>    **F.     Whether the contraband and mail policies are facially valid under the First Amendment.**

Facial challenges to prison regulations are addressed under the test announced by the Supreme Court in *Turner v. Safley.  See e.g. Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998) ("The ultimate legal question is whether this rule is 'reasonably related to legitimate penological interests.'") (internal quotation omitted); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (applying *Turner* factors in facial constitutional challenge).  The following paragraphs in Smith's Complaint are pertinent to claims of facial violation of the First Amendment.

>    **STATEMENT OF CLAIM**
>    2.     In February 2005, the Mn-DOC revised Policy no. 301.030 "Contraband" to redefine "nudity" to mean: ***"the showing of human male or female genitals, anus or pubic area or the showing of the female breast or a substantial portion of the breast below the nipple."***
>    3.     MN-DOC policy no. 301.030 "Contraband" was further revised to include:  ***"see-through coverings that are C 'pasties, lace, mesh and body paint."***
>    4.     The revision of MN-DOC policy 301.030 "Contraband came about as an ***exaggerated response*** to the appearance of a host of new magazine publications being subscribed to by the plaintiffs and other prisoners, that specifically targeted the African American male audience and featured photographs of swimsuit and/or lingerie-clad African American women.    (KING    MAGAZINE,    SMOOTH MAGAZINE, BLACK MEN MAGAZINE, etc.)
>    5.     Consequently, the plaintiff and other African American prisoners suddenly found that their legally

purchased, *prison administration approved* magazine subscriptions were being denied delivery to themC all because the magazines contained photographs of African American women *wearing either swimsuits or lingerie* C and yet being defined as "nude."

. . .

11.     Furthermore, the revision of policy no. 301.030 "Contraband", served to prevent the plaintiffs and other prisoners from receiving books that were erotic in content, or that contained mere written depictions of sexual activity.

. . .

**LEGAL     CLAIMS     OF     CONSTITUTIONAL VIOLATIONS**

2.     The Plaintiffs 1st Amendment right has been subject to infringement by the MN-DOC and the specifically named defendants due to the implementation and enforcement of MN-DOC policy 301.030 "Contraband", in that it is vague, overbroad and unnecessarily sweeping in its definition of nudity, in that magazine and personal photographs of African American (and other racial minority ethnic groups) wearing *swimsuits or lingerie* are classified as "Nudity" and denied delivery to prisoners.

Prisoners are not stripped of constitutional protections, *Turner v. Safley*, 482 U.S. 78, 84 (1987); however, because "courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform," courts apply a deferential standard of review to constitutional challenges regarding prison regulations. *Id.* at 84, 89. Courts will uphold a prison regulation if it is "reasonably related to legitimate penological interests. *Id.* at 89. A four part test is used to determine if a regulation is reasonably related to legitimate penological interests. *Id.* Courts must consider four factors: 1) whether a valid, rational connection between the prison regulation and a legitimate governmental interest has been put forward to justify the regulation; 2) whether inmates

have alternative means to exercise the asserted right; 3) the impact it will have on guards, other inmates and prison resources generally if the asserted constitutional right is accommodated; and 4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," but this is not a "least restrictive alternative test." *Id.* at 89-91.

### 1.    Connection between prison regulation and legitimate governmental interest.

Defendants assert three reasons MN-DOC prohibits inmates from possessing sexually explicit materials (including nudity as defined in the Contraband policy):   1) access to the materials creates a security risk; 2) such materials interfere with sex-offender rehabilitation; and 3) sexually explicit materials create a hostile work environment for staff.  (McComb Aff. &&2-4).

Defendants assert two specific reasons that sexually explicit materials create a security risk.  Inmates use such materials to barter for other items and to pay debts, and unpaid debts lead to inmate fights.  (McComb Aff. &2.)  Additionally, sexually explicit materials objectify women and undermine the authority of female corrections officers. (*Id.*)

Defendants also assert sexually explicit materials, once introduced into prison, cannot be kept from sex offenders, and treatment staff, as part of the treatment process, cannot keep control over what images sex offenders view.  (McComb Aff. &3.)

Defendants set forth two reasons that sexually explicit materials create a hostile work environment.  (McComb Aff. &4.)  First, prison staff encounter sexually explicit

materials in performing cell searches and reviewing mail, and this regular exposure creates a hostile work environment.  (*Id.*)  Second, inmates use such materials to engage in sexual misconduct in front of staff and to sexually harass female staff.  (*Id.*)

This Court must first determine whether there is a valid rational connection between the policy and these asserted government interests behind the policy by considering whether the policy is legitimate, neutral and rationally related to the government objectives.   *Thornburgh*, 490 U.S. at 414.   There is a valid rational connection between the asserted goals and the regulation unless the goals are so remote as to render the policy arbitrary or irrational.  *Turner*, 482 U.S. 89-90.  Here, the asserted interests of security and sex-offender rehabilitation are legitimate interests that could reasonably be addressed by a ban on sexually explicit publications that are bartered by prisoners and cannot be kept away from sex offenders once in the prison.  *See Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (upholding regulation restricting access of sexually explicit materials by inmates.)  This Court finds the goal of avoiding a hostile work environment is also legitimate based on McComb's unrefuted averments that staff is widely exposed to sexually explicit images, and inmates use sexually explicit images to engage in sexual misconduct in front of female staff and to sexually harass female staff.  *Accord*, *Wickner v. McComb*, Civ. No. 09-1219 (DWF/JJK) 2010 WL 3396918, at *5 (D. Minn. July 23, 2010); *Sperry v. Werholtz*, Civil Action No. 04-3125-CM, 2010 WL 1980305, at *8 (D. Kan. May 18, 2010).

The next factor is neutrality.  The Supreme Court defines neutral in the context of prison regulations in a different manner from the familiar First Amendment notion of

content neutrality. *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998); *Giano v. Senkowski*, 54 F.3d 1050, 1055 (2nd Cir. 1995); ("neutrality" in the *Safley* sense is quite different from the familiar First Amendment notion of "content-neutrality.") Thus, a regulation or practice is neutral if it furthers an important governmental interest unrelated to the suppression of expression. *Thornburgh*, 490 U.S. at 415. Even if the regulation is content-based, it "passes constitutional muster because its purpose is to maintain prison security and decrease violence among inmates." *Giano*, 54 F.3d at 1055; *see also Shaw v. Murphy*, 532 U.S. 223, 230 (2001) ("the *Turner* test, by its terms, simply does not accommodate valuations of content.") This Court finds that prison security, prohibiting interference with sex-offender treatment, and protecting against creation of a hostile work environment are objectives that are themselves unrelated to the suppression of expression; therefore, the policies at issue are neutral.

The final issue is whether the policy is rationally related to the government objectives. The policy only fails to meet this standard if "the logical connection between the [policy] and the asserted goal is so remote as to render the policy arbitrary or irrational," [*Safley*, 482 U.S.] at 89-90, 107 S.Ct. 2254, or if the regulation represents an "exaggerated response" to legitimate penological objectives, *id.*, at 98, 107 S.Ct. 2254." *Beard v. Banks*, 548 U.S. 521, 542 (2006) (plurality opinion). Prison officials are not entitled to judgment as a matter of law when a reasonable factfinder could conclude that the regulation is an exaggerated response to the prison's legitimate interests. *Beard*, 548 U.S. at 548.

Smith alleges the policy came about as an exaggerated response to the appearance of a host of new magazine publications being subscribed to by prisoners.  (Complaint &4, p. 4.)  Smith has offered no evidence in support of his conclusion. Instead, Smith appears to challenge the definition of nudity simply because it includes women dressed in swimsuits and lingerie.  And, he challenges the policy against sexually explicit books because inmates are prevented from receiving books that are "erotic in content or that contained *mere* written depictions of sexual activity."  (Complaint &11, p. 5) (emphasis added).  Smith has not offered any evidence that these materials pose little or no security risk (that they are not bartered and do not create debts leading to fights), little or no interference with sex offender treatment, or are not likely to create a hostile work environment.

On the other hand, Defendants submitted the affidavit of Mary McComb, who was involved in the 2004 policy revisions and stated that the revisions were made to streamline the review process to minimize staff exposure to the vast quantity of offensive photographs, magazines and books coming into the facility, and to draft a definition of nudity that could be applied consistently and quickly.  (McComb Aff., &6.)  Therefore, because Defendants have offered a logical connection between the policy and the goals, and Smith has failed to submit evidence to create a genuine issue of material fact that Defendants' response was exaggerated, the first *Turner* factor favors Defendants.

### 2.    Alternative means to exercise the asserted right.

When determining whether alternative means exist to exercise the asserted right, the right must be viewed "sensibly and expansively."  *Thornburgh*, 490 U.S. at 417.  In

*Thornburgh*, there was an alternative means to exercise the right to freedom of expression where prisoners had a right to send, receive and read a broad range of publications, other than those restricted by the prison policy.  The same is true in this case.  Prisoners can receive a publication that contains a nude photograph because publications are only prohibited if they "feature" nudity.  (McComb Aff. &9.)   Whether a publication "features" nudity is based in part on the ratio of nude images to the total number of pages of the publication; the manner in which the nude images are displayed (including size); and whether the publication advertises nude images on the front page.   (*Id.*)   Additionally, photographs that show only cleavage or buttocks are not prohibited.  (McComb Aff. &10).  Prisoners can also receive books that contain sexually explicit descriptions, as long as the main subject is not sexual in nature and the book contains only a few short descriptions of explicit sexual activity.  (*Id.* &11.)  This factor also favors Defendants.

### 3.    Impact on others in the prison if the constitutional right is accommodated.

> "Where the class of publications to be excluded is limited to those found potentially detrimental to order and security; the likelihood that such material will circulate within the prison raises the prospect of precisely the kind of "ripple effect" with which the Court in *Turner* was concerned. Where. . . the right in question "can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, . . . the courts should defer to the "informed discretion of corrections officials[.]"

*Thornburgh*, 490 U.S. at 418 (internal quotations omitted) (regulation allowed wardens to reject incoming publications that were found to be detrimental to security, order, and

discipline in the prison or if it would facilitate criminal activity) (quoting *Turner*, 482

U.S. at 90, 92).   In this case, the magazines with scantily clad women and books

containing sexually explicit content are similarly likely to circulate in prison and create

the security risks associated with barter and debts and interference with sex offender

treatment, resulting in less safety for others in the prison.   Additionally, the large quantity

of such materials in the prison creates a hostile work environment because staff is

exposed to the materials, and prisoners use the materials to sexually harass staff.

(McComb Aff. &4.)   Therefore, this factor supports Defendants' policies.

### 4.    The absence of ready alternatives.

> "[I]f an inmate claimant can point to an alternative that
> fully accommodates the prisoner's rights at *de minimus* cost
> to valid penological interests, a court may consider that as
> evidence that the regulation does not satisfy the reasonable
> relationship standard." . . . [W]hen prison officials are able to
> demonstrate that they have rejected a less restrictive
> alternative because of reasonably founded fears that it will
> lead to greater harm, they succeeded in demonstrating that the
> alternative they in fact selected was not an "exaggerated
> response" under *Turner*.   Furthermore the administrative
> inconvenience of this proposed alternative is also a factor to
> be considered . . .

*Thornburgh*, 490 U.S. at 418 (internal quotations omitted) (quoting *Turner*, 482 U.S. at

90-91).   Smith suggests that nudity should be defined as "the showing of human male or

female genitals, anus, or *fully exposed female breasts that expose the nipple*," and

exclude women who are "clothed in either swimsuits or lingerie."   (Complaint, &1.A., p.

13 (emphasis in original)).   Smith also suggests Defendants could alternatively rip out the

offending pages from books and magazines and deliver the remainder of the publication. (Complaint, &6.C., p. 9.)

Defendants assert that an alternative which allows nudity and sexually explicit written materials, as defined in MN-DOC 301.030, to be released into prison would cause sexual harassment, violence and interference with rehabilitation of sex offenders.  In other words, Smith's proposals are not alternatives because they would not meet Defendants' objectives.  Given the deference that the Court must give to prison staff in managing the problems that arise in prison, *see Shaw*, 532 U.S. at 230, this Court agrees Smith's alternative definition of nudity would place more than a *de minimus* burden on the valid penological interests asserted by Defendants.  Especially in the absence of the availability of completely nude pictures of women, photographs of scantily clad women and sexually explicit written materials could be the subject of barter and debts, interference with sex offender treatment, and creation of a hostile work environment.

Defendants also assert tearing out the offending pages would create an undue administrative burden and would increase staff exposure to material that contributes to a hostile work environment.  This Court has reviewed the sample magazine issues, and pages from the book *Addicted* supplied by Defendants, and agrees that the burden of tearing out offending pages of similar publications would require a great deal of staff time and exposure to material that may create a hostile work environment.  (McComb Aff., Ex. F, G and I)  Thus, Smith has failed to show a ready alternative to the contraband and mail policies concerning nudity and written sexually explicit materials.  All *Turner* factors favor upholding the definition of nudity and sexually explicit written materials in

the MN-DOC policies, and the prohibition on delivery to inmates of such contraband received in the mail.

> **G.  Whether Smith's "as-applied" constitutional challenge to denial of magazines and photographs under the First Amendment should be dismissed.**

Liberally construing the complaint, Smith appears to allege an "as-applied" constitutional challenge to the denial of delivery of magazines and photographs to him. Smith alleges:   "Consequently, the plaintiffs and other African American prisoners suddenly found that their legally purchased, ***prison administrative approved*** magazine subscriptions were being denied delivery to them all because the magazines contained photographs of African American  women ***wearing either swimsuits or lingerie*** and yet being defined as 'nude.'"   (Complaint &5, p. 4 (emphasis in original)).   With respect to photographs, he alleges:

> The Plaintiffs 1st Amendment Right has been subject to infringement by the MN-DOC and the specifically named defendants due to the implementation and enforcement of MN-DOC policy no. 301.030 "Contraband", in that it is vague, overbroad and unnecessarily sweeping in its definition of nudity, in that magazine and personal photographs of African American women (*and other racial minority ethnic groups*) wearing ***swimsuits or lingerie*** are classified as "Nudity" and denied delivery to prisoners.

(Complaint, &2, p. 8).

As discussed above, Smith's facial challenge to the MN-DOC policy fails. Therefore, to succeed in an as-applied constitutional challenge, Smith must establish the policies are invalid as applied to the particular items in his case, in such a way that negates the legitimate governmental concerns.  *Dean v. Bowersox*, 325 Fed.Appx. 470,

472 (8th Cir. 2009) (unpublished) (citing *Murphy v. Missouri Dept. of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004).   The MN-DOC's definition of nudity encompasses women wearing swimsuits or lingerie, if the swimsuits or lingerie are see-through and show the genitals, anus, pubic area or the female breast or a substantial portion of the breast below the top of the nipple.   (McComb Aff. &5, Ex. A.)   Smith does not allege the magazines and the photographs denied to him fell outside this definition.   Therefore, Smith has failed to state a claim that the MN-DOC Policy regarding nudity violated the First Amendment as-applied to the denial of magazines and photographs to him.

   **H.   Whether MN-DOC policies prohibiting delivery to inmates of incoming mail containing nudity and sexually explicit materials violate the Equal Protection Clause of the Fourteenth Amendment.**

   The *Turner* analysis does not apply to alleged racial classifications in prison regulations.   *Johnson v. California*, 543 U.S. 499, 510 (2005).   Strict scrutiny is the proper standard of review.   *Id.* at 515.   A plaintiff must meet two requirements to establish that a prison regulation violates the Equal Protection Clause of the Fourteenth Amendment.   *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).   First, the plaintiff must establish he was treated differently than others who were similarly situated to him for purposes of the challenged government action.   *Id.*   Second, the plaintiff must prove the discrimination was purposeful.   *Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . [p]roof of racially discriminatory purpose or intent is required.")

As a starting point, the policies prohibiting delivery of incoming magazines containing nudity, defined in Section I.A. above, are racially neutral; not only do they apply neutrally to all inmates, racial classifications are not used to determine what constitutes nudity.  Smith's allegations of equal protection violation are summarized as follows.  The revision of the definition of nudity in MN-DOC Policy No. 301.030 came about because African American prisoners began subscribing to magazines such as *King*, *Smooth*, and *Black Men*, which were targeted to an African American audience and featured swimsuit or lingerie-clad African American women.  (Complaint &4, p. 4.) Similar magazines that were targeted at a Caucasian audience were allowed into prison, including *FHM*, *Stuff*, *Maxim*, *GQ*, and *Rolling Stone*.  (Complaint &6, p. 4.)

The policies prohibiting delivery of publications containing nudity do not contain racial classifications.  Smith's claim is that the policies are not applied in a neutral manner.  However, Smith alleges that certain magazines are treated differently, not that different classifications of prisoners are treated differently.  In other words, an African American or Caucasian inmate could receive the same issue of *Rolling Stone* if it was approved, and neither could receive an issue of *King*, if it were rejected as contraband. Additionally, Defendants offered evidence that each issue of each magazine is reviewed independently to determine if it violates the contraband policy.  (McComb Aff. &&6, 14-16, 24).  Issues of *King*, *Smooth*, and *Smooth Girl* have not always been denied, and issues of *FHM*, *Stuff*, *Maxim*, *GQ*, and *Rolling Stone* have not always been approved. (Perez Aff. && 8-9, Ex. A.)  The Court finds that Smith has not alleged a valid claim that he was treated differently than a similarly situated prisoner of another race.

Even if the Court accepted Smith's underlying assumption that African American prisoners prefer to view swimsuit and lingerie clad African American women and Caucasians prisoners prefer to view swimsuit and lingerie clad Caucasian women, and more magazines showing Caucasian women in swimsuits and lingerie are allowed than of African American women, Smith has alleged only a disparate impact of the policies.  To allege an equal protection violation, he must also allege intent to discriminate based on race.  *Arlington Heights*, 429 U.S. at 265.  An intent to discriminate is established if the decision-maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Keevan v. Smith*, 100 F.3d 644, 651 (8th Cir. 1996) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotations omitted)).

Although Smith alleges discriminatory intent, he offers nothing in support of this contention, other than his speculation that the contraband policies were revised because African American prisoners began subscribing to *King*, *Smooth*, and *Smooth Girl*. Defendants have offered the Affidavit of Mary McComb, who recommended the revisions to the contraband and incoming mail policies and was involved in revising the policies.  McComb stated the definition of nudity was revised to streamline mailroom review procedures and to protect staff who were being exposed to an increasing number of nude photos being sent to inmates from vendors.  (McComb Aff. &&5-7.)  The minutes from a meeting in 2004 indicate that McComb recommended revising the nudity definition for this reason, and the recommendation was approved.  (McComb Aff., Ex. B).  Smith did not submit any counter evidence to establish there is a genuine issue of

material fact concerning the non-discriminatory motivation behind the revision of the policies.   For these reasons, pursuant to FRCP 56(e), the Court recommends granting Defendants' motion for summary judgment on Smith's equal protection claim regarding revision of the definition of nudity in MN-DOC Policy No. 301.030.

Smith asserts a number of other equal protection violations.   He alleges magazines and other publications containing nudity and sexually explicit written materials are not allowed but the magazine *The Advocate* is allowed, even though it promotes the homosexual lifestyle.   A liberal reading of this allegation suggests that heterosexuals are treated differently than homosexuals with regard to receiving magazines.   This claim fails because Smith does not allege the same policies regarding nudity and sexually explicit materials are enforced for heterosexuals but not for homosexuals.   The Court will not assume that by "promoting the homosexual lifestyle," Smith is alleging "the Advocate" contains nudity and sexually explicit materials that would be prohibited if they were contained in a magazine that promoted the heterosexual lifestyle.   Smith failed to allege dissimilar treatment of heterosexuals and homosexuals, and this claim should be dismissed.

Next, Smith alleges discrimination based on the fact that "contraband" involving drugs or gang literature is preserved for appeals and evidentiary hearings but "contraband" involving nudity or sexually explicit materials is not preserved for evidentiary hearings.   Here, Smith alleges different classes of contraband are treated differently, not different classes of people.   Thus, Smith fails to state an equal protection claim.   In a similar vein, Smith alleges African American males are denied magazines

featuring African American women wearing swimsuits or lingerie, but MN-DOC allows television and newspapers that feature images of women in swimsuits or magazines. Again, Smith is alleging that things, rather than classes of people, are treated differently. This is not a recognized equal protection claim.

> **I.**     **Whether MN-DOC appeal procedures for denial of delivery of photographs or books containing nudity or sexually explicit written materials violate the Due Process Clause of the Fourteenth Amendment.**

As noted above, MN-DOC has revised its procedures for appealing the denial of delivery of magazines containing nudity or sexually explicit written material.  Therefore, Smith does not have a claim for declaratory or prospective relief concerning the former procedure or lack of procedure.  Smith also alleges a violation of the Due Process Clause on the basis that the only appeal procedure available for the denial of delivery of photographs or books containing nudity or sexually explicit written material is to write the mailroom staff and ask them to reconsider.  (Complaint &13, p. 5.)  Smith alleges that the Due Process Clause requires prisoners to have: 1) the opportunity to view the alleged contraband in order to contest the decision; 2) a hearing with the opportunity to present evidence including the contraband at issue; 3) if the appeal is lost, the ability to send the contraband to a place of his own choosing, as opposed to returning it to the publisher or destroying it.  (Complaint, p. 10, &6(e)).

To state a violation of procedural due process, the plaintiff must demonstrate the loss of a protected liberty or property interest.  *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009).  If that requirement is met, the amount of process due is "determined by

balancing the specific interest affected, the likelihood the challenged action would result in an erroneous deprivation of that right, and the burden of providing additional procedures, including administrative costs and burdens." *Id.* (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) and *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).   An inmate has a protected liberty interest in receiving "uncensored communication," which includes packages, newspapers and magazines.   *Id.* at 677. When a prison official restricts the right to receive uncensored communication, minimum procedural safeguards must be provided.  *Id.*   Notice must be provided to the inmate that the communication, in this case, photographs and a book, was rejected.  *Id.*

In addition to notice, when mail is denied to an inmate, due process requires an opportunity to be heard and opportunity to appeal to a prison official uninvolved in the original decision.  *Ping v. Raleigh*, No. 98-2739, 2000 WL 59539 at *1 (8th Cir. Jan. 24, 2000) (unpublished); *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974) (overruled on other grounds).  Opportunity to be heard, in this context, is sufficient if the inmate has the opportunity to file a written grievance or appeal to someone not involved in the censorship decision.  *Id.*

Defendants provided evidence that Smith was given notice when he was denied delivery of the book ADDICTED, and Smith appealed to the supervisor of the property unit and the Allowable Items Committee, which was not involved in the original decision. (Hillyard Aff., &4, Ex. C and D).  Smith did not offer anything to refute this evidence. Instead, it is his contention that the course of action supported by the record was insufficient because he was not provided an opportunity to review and present evidence

at a hearing; and, if he lost the appeal, the book would be returned or disposed of and not sent to a place of his choosing. The law does not support Smith's claim, and Defendants should have summary judgment.

Smith likewise contests the appeal procedure for the denial of photographs, which he alleged that he ordered in 2007 and was denied delivery. Defendants do not have documentation of this transaction because they only retain evidence of denial of photographs for one year. (Perez Aff. &10). Nonetheless, Defendants set forth the appeal procedure for denial of photographs. Inmates are provided with notice of the denial and may appeal the decision of the mailroom supervisor by sending correspondence. (*Id.*) An inmate may then appeal the mailroom supervisor's decision to the facility's Correspondence Review Authority, which is not involved in the original decision. (*Id.*) In discovery, Smith stated that he appealed denial of the photographs to the Correspondence Review Authority and was denied. (Jacot Aff., Ex. B.) Therefore, Smith has not refuted evidence that Defendants provided due process of notice and opportunity to be heard involving someone other than the original decision-maker. Defendants should have summary judgment on Smith's claim of violation of due process by the denial of delivery of photographs.

## III.   CONCLUSION

In summary, Defendant Tom Roy should be substituted for Joan Fabian because Fabian is no longer the Commissioner of the Department of Corrections. Smith's claims against Defendants Skon, Dingle, Cosgrove, Benson and Haworth should be dismissed without prejudice, because Smith has not established they were served with the summons

and complaint.  Smith's claims for damages against the remaining defendants are barred by the Eleventh Amendment.

Smith lacks standing for declaratory and injunctive relief on the following claims: (1) the MN-DOC magazine and review procedure violates the Due Process Clause of the Fourteenth Amendment; and (2) the MN-DOC contraband, mail and appeal procedure policies regarding STG paraphernalia, single issue magazines and personal letters or photographs from wives or girlfriends violate the First Amendment, Equal Protection Clause of the Fourteenth Amendment, and Due Process Clause of the Fourteenth Amendment.

Furthermore, Smith failed to state a claim that the MN-DOC definition of nudity is unconstitutionally vague.  And, Defendants should have summary judgment on Smith's claims that MN-DOC's contraband and mail policies are facially invalid under the First Amendment because the Turner factors favor upholding the regulations.  Smith also failed to state a claim that the MN-DOC policy regarding nudity violated the First Amendment as applied to him.

Defendants should have summary judgment on Smith's equal protection claim regarding revision of the definition of nudity in MN-DOC Policy No. 301.030. Furthermore, Smith failed to state any other equal protection claim, and his remaining equal protection claims should be dismissed.  Finally, Defendants should have summary judgment on Smith's claims of violation of the Due Process Clause regarding appeals of denial of delivery of photographs and books.

## IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Defendant Tom Roy be substituted for Joan Fabian;

2.    Smith's claims against Defendants Skon, Dingle, Cosgrove, Benson and Haworth be dismissed without prejudice;

3.    Defendants' motion to dismiss and for summary judgment (Doc. No. 38) be **GRANTED** and the **COMPLAINT DISMISSED**; and

4.    If this Report and Recommendation is adopted, judgment should be entered.


Dated this <u>25</u>th day of January 2012.


                                        *s/ Tony N. Leung*
                                        TONY N. LEUNG
                                        United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 9, 2012**. A party may respond to the objections within 14 days after service thereof.   Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.