UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| CARLOS SMITH,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JOAN FABIAN, ERIC SKON,<br>LYNN DINGLE, MARY MCCOMB,<br>ANITA ALEXANDER,<br>JOSEPH COSGROVE,<br>JAMES BENSON, MARY JIPEREZ,<br>HELENE HAWORTH, JUNE LIND,<br>LEIGH MCCOY, JOHN KING, and<br>DAVE REISHUS,<br>　　　　　　　Defendants. | Civil No. 10-2193 (JRT/TNL)<br><br>MEMORANDUM OPINION AND<br>ORDER ADOPTING THE REPORT<br>& RECOMMENDATION OF THE<br>MAGISTRATE JUDGE |

Carlos Smith, #177289, Minnesota Correctional Facility-Stillwater, 970 Pickett Street North, Bayport, MN  55003, plaintiff *pro se*.

Margaret E. Jacot, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN  55101, for defendants Joan Fabian, Mary McComb, Anita Alexander, Mary Jjperez, June Lind, Leigh McCoy, John King, and Dave Reishus.

A prisoner incarcerated at the Minnesota Correctional Facility at Stillwater ("MCF-STW"), plaintiff Carlos Smith, brings this action under 42 U.S.C. § 1983, alleging First and Fourteenth Amendment constitutional violations.  He challenges the Minnesota Department of Corrections ("MN-DOC") Contraband Policy 301.030 and Mail Policy 302.020, which prohibit the delivery of certain sexually explicit material to prisoners.  On August 30, 2011, Defendants Anita Alexander, Joan Fabian, Mary Jiperez,

John King, June Lind, Mary McComb, Leigh McCoy, Dave Reishus (collectively, "Defendants") filed motions to dismiss and for summary judgment. On January 25, 2012, United States Magistrate Judge Tony N. Leung issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants' motions. (R&R, Docket No. 57.) The Court has conducted a *de novo* review of those portions of the R&R to which Smith objects[1] and carefully reviewed the submitted materials. The Court will overrule Smith's objections and adopt the R&R in its entirety because there are no genuine issues of material fact regarding Smith's claims.

## BACKGROUND[2]

Smith challenges MN-DOC Contraband Policy 301.030 and Mail Policy 302.020. Policy 302.020 states that "[i]ncoming and outgoing mail, in whole or in part, is not authorized if it . . . contains contraband or pertains to sending contraband into or out of the facility[.]" (Pl.'s Resp. to Defs.' Mot. to Dismiss, Exs. B19 and B20, at 42-43, Nov. 15, 2010, Docket No. 13.) MN-DOC Contraband Policy 301.030 includes the definitions and procedures relating to "contraband." (*Id.* at 48-51.)

In 2004, MN-DOC amended the section of its contraband policy banning the distribution of certain sexually explicit material. (Aff. of Mary McComb ¶¶ 5-6, Aug. 30, 2011, Docket No. 44.) MN-DOC made this amendment in order to consolidate and

---

[1] The Court will discuss only the specific objections raised by Smith. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b).

[2] A more thorough factual background is available in the R&R.

streamline its policies and because of an increase in the number of "offensive" photographs being sent to prisoners. (*Id.* ¶ 6.) The amended MN-DOC Contraband Policy 301.030 defines sexually explicit materials as:

> (1) all materials that contain pictorial depictions of sexual activity;
>
> (2) published materials featuring nudity or written depictions of sexual activity, unless such depictions illustrate medical, educational, or anthropological content;
>
> (3) non-published materials that contain pictorial depictions of nudity (including but not limited to pictures, photographs, internet printings, and drawings); and
>
> (4) non-published materials containing written depictions of sexual activity that, based on an individualized review, are determined to constitute a risk to the safety and security of the facility, facilitate criminal activity, or undermine offender rehabilitation; but
>
> (5) excluding materials issued by facility treatment staff to an offender currently participating in a sex offender treatment program.

(*Id.* ¶ 5, Ex. A at 1-2.) Nudity is defined as:

> the showing (including a see-through covering) of human male or female genitals, anus or pubic area or the showing (including a see-through covering) of the female breast or a substantial portion of the breast below the top of the nipple. Examples of see-through coverings that are not permitted include 'pasties,' lace, mesh, and body paint through which the covered area is showing.

(*Id.*) Any single photograph containing nudity is contraband. (*Id.* ¶ 9.) Publications are generally only contraband if they "feature" nudity, such as containing a large number of nude images or highlighting nude images on the front cover. (*Id.*)

Published written descriptions of sexual activity are contraband when the publication's main subject matter is sexual in nature and most, if not all, of the content

contains repeated and lengthy descriptions of sexual activity.  (*Id.* ¶ 11.)  Written descriptions of sexual activity in personal correspondence are only considered contraband if they constitute a risk to the safety and security of the facility, undermine offender rehabilitation, or facilitate criminal activity.  (*Id.*)  Examples of letters considered contraband include those involving violence, including rape, or sexual letters to minors. (*Id.*)

Security Threat Group ("STG") paraphernalia, which includes materials associated with gangs, is also contraband.  (*Id.* ¶ 21, Ex. A at 1-2.)  STG paraphernalia can include magazines, pictures, posters, clothing, and symbols associated with gangs.  (*Id.* ¶ 21, Ex. E.)

Smith claims that Defendants denied him the delivery of magazines such as *King*, *Smooth*, and *Smooth Girl*, for which he had subscriptions.  (*See* Pl's Resp., Ex. B16, at 20; Aff. of Margaret Jacot, Ex. B, at 12, Aug. 30, 2011, Docket No. 41.)[3]  Smith is African American and states that the aforementioned publications "cater to the African American male audience."  (*See* Pl. Resp. ¶ 1(c).)  MN-DOC only maintains records of the denial of mail for one year, and it does not have any record of denying Smith these magazines during the last year.  (Aff. of Mary Perez ¶¶ 4, 6, Aug. 30, 2011, Docket No. 45.)  Smith further claims that MN-DOC delivers similar magazines which allegedly cater to white men, such as *Maxim*, *GQ*, and *Rolling Stone*.  (*See* Pl. Resp. ¶ 2(a).)  The record includes affidavits from other African American prisoners complaining that MN-

---

[3] Smith also complained that Defendants denied him photographs and a copy of the book *Addicted.* (Jacot Aff., Ex. B, at 11-12.)

DOC withholds sexually explicit material in a discriminatory fashion, as well as samples of MN-DOC records sent to prisoners informing them of withheld mail. (*Id.*, Exs. A-1-B-18.) Smith does not describe, however, specific issues of allegedly African American publications that MN-DOC has withheld that are comparable to specific issues of allegedly white publications that MN-DOC has distributed. Defendants submitted to the Court copies of magazines it has withheld featuring African American women, such as the July/August 2008 issue of *King*, and featuring white women, such as the June 2011 issue of *American Curves*. (McComb Aff., Exs. F-H.)

**ANALYSIS**

**I.    STANDARD OF REVIEW**

Defendants move for dismissal and summary judgment. Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). At the motion to dismiss stage, the record for review before the Court is generally limited to the pleadings, some matters that are part of the public record, and any documents attached as exhibits that are necessarily embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   OFFICIAL CAPACITY CLAIMS AND ELEVENTH AMENDMENT

Smith first objects to the Magistrate Judge's recommendation that this Court dismiss Smith's damages claims against Defendants, pursuant to the Eleventh Amendment. Specifically, Smith objects that Mary McComb is a proper defendant because she was personally involved in the matters involved in his complaint. (Obj. at 3.)

He also contends that Tom Roy is legally liable for all MN-DOC staff, and so should be held liable.[4] (*Id.*) The Court must determine whether Smith's damages claims against Defendants are barred by sovereign immunity.

### A. Standard of Review

The doctrine of sovereign immunity, embodied in the Eleventh Amendment, protects states and state officials from liability in actions seeking monetary damages where the state treasury would pay such damages. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890) (holding that states are immune from suits by their own citizens). "Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a federal court retains jurisdiction, notwithstanding the Eleventh Amendment, to direct State officials to conform their practices to the requirements of Federal law . . . [but not to order] monetary damages from individual State Officers, in their official capacities . . . ." *King v. Dingle*, 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010). A state or state official may be held liable for money damages only if the state has waived its immunity through a clear and express waiver or if Congress has abrogated that immunity. *Alden v. Maine*, 527 U.S. 706, 756 (1999); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). This Court has previously noted that "the State of Minnesota has [not] waived its Eleventh Amendment immunity with respect to §§ 1981 or 1983 claims. Additionally, in enacting §§ 1981 and 1983, Congress

---

[4] The Court adopts the Magistrate Judge's recommendations that Tom Roy be substituted for Defendant Joan Fabian, as Roy is the new Commissioner of the Minnesota Department of Corrections, and that Defendants Eric Skon, Lynn Dingle, Joseph Cosgrove, James Benson, Helene Haworth be dismissed because they were not served. (*See* R&R at 1 n.1, 9.) Smith has not asserted specific objections to these recommendations.

did not make a clear statement of intent to abrogate states' Eleventh Amendment immunity." *Stahl Const. Co. v. State of Minn.*, No. 03-3104, 2004 WL 742058, at *3 (D. Minn. March 4, 2004).

### B. Analysis

The Court finds that Defendants are not liable for money damages because of the Eleventh Amendment. Because Smith did not identify the capacity upon which he sued Defendants, the Court must assume that Smith sued them in their official capacities. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Smith's claims for damages against Defendants in their official capacities are barred because Congress did not disturb Eleventh Amendment immunity in enacting Section 1983 and because the state has not waived its immunity. *See Stahl Const. Co.*, 2004 WL 742058, at *3. The dismissal of Smith's damages claims is appropriate under both the motion to dismiss and summary judgment standards because Smith has failed to state viable claims.

Smith also seeks declaratory and injunctive relief barring Defendants' policies, however; because these claims are not barred by the Eleventh Amendment, the Court will address them below. *See Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1989) ("A state agent, however, may be sued in his official capacity if the plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim.").

### III. FIRST AMENDMENT

Smith objects to the Magistrate Judge's conclusion that MN-DOC's policies did not violate his First Amendment rights. Smith's objections primarily aim at the

Magistrate Judge's finding that a valid, rational connection exists between the challenged MN-DOC policies on sexually explicit material and legitimate governmental interests. MN-DOC put forward three justifications for its policies: that access to the sexually explicit material (1) creates a security risk; (2) interferes with sex offender rehabilitation; and (3) generates a hostile work environment for MN-DOC staff. The Magistrate Judge found each of these asserted governmental interests to be legitimate and held that a "valid, rational connection" existed between these interests and the challenged policies. (R&R at 17-20.) The Court must determine, then, whether Defendant's policies are reasonably related to legitimate penological interests.

### A.   Standard of Review

Under the First Amendment, "as a general matter, government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v. Entm't Merch. Ass'n*, 131 S. Ct. 2729, 2733 (2011) (internal quotation marks omitted). Prisoners are not stripped of these constitutional protections. *See Turner v. Safley*, 482 U.S. 78, 84 (1987). However, courts apply a deferential standard of review to constitutional challenges to prison regulations. *Id.* at 84-85. "[P]rison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986).

Courts will uphold a constitutional challenge to a prison regulation if the regulation is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at

89. Courts use a four-part test to determine if a regulation is reasonably related to legitimate penological interests: (1) whether a "valid, rational connection" exists between the prison regulation and the legitimate governmental interest[5] put forward to justify it; (2) "whether there are alternative means of exercising the [constitutional] right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives."[6]  *Id.* at 89-90. The Court will address Smith's First Amendment claims using the summary judgment standard: it is necessary to consider the parties' evidence to determine if the disputed policies are "reasonably related to legitimate penological interests."

### B. Analysis

Considering the evidence submitted by the parties, the Court finds that Defendants' policies are reasonably related to legitimate penological interests. *See Hodgson v. Fabian*, 378 Fed. Appx. 592, 594 (8th Cir. 2010) (rejecting facial challenge to MN-DOC Contraband Policy 301.030 because the Eighth Circuit had "previously recognized a government interest in similar regulations" related to sexually explicit

---

[5] The objective of the regulation must be neutral, without regard to the content of the expression. *Id.* at 90. An objective is neutral if it furthers important governmental interests unrelated to the suppression of expression. *Thornburgh v. Abbott*, 490 U.S. 401, 415-16 (1989) (holding that where regulations "draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' . . . .").

[6] The fourth factor is not a "least restrictive alternative test;" rather, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

material); *Hodgson v. Fabian*, 2009 WL 2972862, at *2 (D. Minn. 2009) (quoting MN-DOC Contraband Policy 301.030). Specifically, the Court finds that the three rationales put forward by Defendants sufficiently support the challenged MN-DOC policies.

First, access to the sexually explicit material at issue poses a security risk because it contributes to inmate bartering and assaults. *See Zenanko v. LaFleur*, 228 F.3d 933, 933 (8th Cir. 2000) (recognizing legitimate penological interests of safety and security). Smith argues that inmates will barter for anything of value, not just sexually explicit material, and that Defendants have no empirical evidence that safety is compromised by the presence of sexually explicit material. (Obj. at 3-4.) The Court overrules this objection because Defendants do not base their claims of a security risk on mere conjecture, but on the affidavit of Mary McComb.[7] As the Associate Warden of Administration at MCF-STW, McComb has knowledge of the effect of sexually explicit material at MCF-STW. McComb states that inmates have used sexually explicit material in the past to buy canteen items or to pay gambling debts. (McComb Aff. ¶ 2.) She further states that indebtedness leads to assaults in prison and creates tension among offenders. (*Id.*) Due to the connection between sexually explicit material, indebtedness, and assaults, the Court finds that Defendants have established a security risk posed by the sexually explicit material. *See Spence*, 807 F.2d at 755 (discussing "wide-ranging deference" due to prison officials).

---

[7] Furthermore, "[p]rison officials need not endure assaults . . . or sexual improprieties before implementing policies designed to prevent such activities in an uneasy atmosphere." *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008).

Second, the sexually explicit material interferes with sex offender rehabilitation. *See Sperry v. Werholtz*, No. 04-3125-CM, 2010 WL 1980305, at *8 (D. Kan. May 18, 2010) (recognizing legitimate penological interest of rehabilitating sex offenders). Smith objects that MCF-STW has no rehabilitation programs designed specifically for sex offenders. (Obj. at 2.) However, state facilities, including MCF-STW, house sex offenders and seek to rehabilitate sex offenders during their imprisonment. (*See* McComb Aff. ¶ 3.) McComb states that, once sexually explicit images enter a prison, the materials can infiltrate the entire facility and find their way to sex offenders. (*Id.*) The Court finds that keeping these sexually explicit images from sex offenders is a legitimate penological interest. *See Dawson v. Scurr*, 986 F.2d 257, 260-61 (8th Cir. 1993) (allowing restriction on sexually explicit material where "[if] the specified depictions were allowed in the cells of some inmates, they would likely be passed around and find their way into the cells of psychologically unfit inmates, interfering with their rehabilitation.").[8]

Third, the sexually explicit material facilitates a hostile work environment for staff. *See Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (en banc) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate."). Smith objects to this

---

[8] *See also Wickner v. McComb*, No. 09-1219, 2010 WL 3396918, at *5 (D. Minn. July 23, 2010) (observing that rehabilitating sex offenders is a legitimate penological interest); *Ramirez v. Pugh*, 379 F.3d 122, 129 (3d Cir. 2004) (holding that some connections between policies and penological interests are "sufficiently obvious such that the first prong of *Turner* could be resolved on the basis of common sense.").

finding by making a variety of unsupported factual assertions, including: that female staff were not subjected to inmates exposing themselves until prisoners lost access to the sexually explicit material; that female staff dress in tight clothing, which, according to Smith, makes them responsible for a hostile work environment; and that MN-DOC staff are not strongly offended by nudity. (Obj. at 2-3.) These allegations are unsupported by the record. McComb's affidavit establishes that inmates have made comments about how female staff compare to sexually explicit images, that inmates have used images to engage in sexual misconduct in front of female staff and to sexually harass female staff, and that staff have complained about the sexually explicit materials to which they are exposed in the workplace. (McComb Aff. ¶ 5.) Smith's unsupported objections to this information do not raise a genuine question of material fact. *See Goff v. Dailey*, 991 F.2d 1437, 1439 (8th Cir. 1993) ("[T]he prison has a legitimate penological interest in punishing inmates for mocking and challenging correctional officers by making crude personal statements about them in a . . . room full of other inmates.").

Finally, Smith makes a general objection that the policies are an "exaggerated response" and do not further an important governmental interest. (Obj. at 3.) Construed broadly, the Court interprets this objection to challenge whether there is a ready alternative to the current ban on sexually explicit material. *See Turner*, 482 U.S. at 90 ("[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."). The Court adopts the Magistrate Judge's conclusion that there is no ready alternative that would meet MN-DOC's legitimate penological interests without imposing an undue burden on staff. It

would be unduly time consuming to require MN-DOC staff to rip out pages of magazines with offending images, particularly given the large quantities of magazines and other sexually explicit material sent to inmates.[9]  Furthermore, there is no evidence that a less restrictive definition of "nudity" would achieve Defendants' goals of decreasing the bartering of images and sexual harassment and avoiding interference with sex offender treatment.  *See id.* at 91 (stating that an alternative is acceptable if it creates a "*de minimis* cost to valid penological interests.").[10]  Accordingly, the Court finds that Defendants did not violate Smith's First Amendment rights.

## IV.   EQUAL PROTECTION

Smith next objects to the Magistrate Judge's recommendation that this Court dismiss his equal protection claim.  Smith contends that Defendants created policies that targeted African American inmates and their desired publications.  Smith mounts both facial and as-applied challenges, and claims that Defendants' policies ban "Black publications" but allows "white publications," even when both sets of magazines contain similar sexual or gang-related content.  (Obj. at 4.)  He also argues that the policies are

---

[9] *See* McComb Aff. ¶¶ 6 (stating that MN-DOC "attempted to craft a nudity definition that contained clear language that could be applied consistently and quickly to minimize the amount of time mailroom staff would have to spend looking at a photograph before deciding whether to deny delivery."), 14 (explaining the centralized review process created due to the large number of magazines delivered to inmates).

[10] It is possible that Smith may be entitled to access some of the sexually explicit material in another fashion, such as in a library.  Smith has not proposed such an alternative, however.  The Court declines to consider it because the parties have not submitted evidence on the propriety of such an alternative and because Smith challenged the failure of Defendants to **deliver** sexually explicit material to him pursuant to MN-DOC Contraband Policy 302.020.

purposefully discriminatory.  As proof of discriminatory purpose, Smith claims that McComb's affidavit displays racism.  He further claims that MN-DOC implemented the amendments to the contraband policy regarding sexually explicit material only when African American men began viewing certain pornographic or other materials, and that this "proximity in time" shows a discriminatory purpose.  (*Id.*)  The Court must decide whether Smith has stated an equal protection claim.

### A. Standard of Review

When analyzing a claim under the Equal Protection Clause, the Court must first address whether the plaintiff was treated differently than others who were similarly situated.  *Klinger v. Dept. of Corrs.,* 31 F.3d 727, 731 (8th Cir. 1994).  "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*  Second, the Court must address whether the discrimination was purposeful.  *Id.* at 733 (citing *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 274 (1979)); *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) ("[p]roof of discriminatory racial purpose is required to establish an equal protection violation").  The Court will analyze Smith's equal protection claim using the summary judgment standard because it is necessary to consider the parties' evidence to determine if Smith raised a genuine issue of material fact.

### A. Disparate Treatment

First, Smith has not raised a fact question regarding whether Defendants treated him differently than similarly situated individuals.  As a preliminary matter, the Court

finds that Smith is similarly situated to other prisoners at MCF-STW. All are prisoners and many order publications and photos that MCF-STW withholds.

Smith has not offered evidence to prove that Defendants treated him differently than these other prisoners. MCF-STW's policies does not mention race, nor do they imply that enforcement personnel should consider race when implementing these policies. Furthermore, Smith has provided only conclusory statements, and no evidence, to show that publications desired by African American prisoners are treated differently than similar publications desired by white prisoners. For example, Smith has provided no example of two specific and similar magazine issues that Defendants treated differently.

In contrast, Defendants submitted to the Court magazines featuring similar levels of undress that MN-STW labeled as "contraband," including a magazine featuring white women. (McComb Aff., Exs. F-H.) MCF-STW records show that MCF-STW refused to distribute multiple issues of allegedly white magazines and approved multiple issues of allegedly African American magazines. (Perez Aff. ¶¶ 8-9.) The evidence thus suggests that MCF-STW treats all prisoners and publications equally and that bans on publications depend on race-neutral content. (*See* Aff. of Leigh McCoy ¶ 2, Aug. 30, 2011, Docket No. 43; Perez Aff. ¶ 11; McComb Aff. ¶ 8.) The Court thus finds no genuine issue of material fact regarding Smith's disparate treatment claim.

### B. Discriminatory Purpose

Even if Smith could show that MCF-STW treated him differently than other similarly situated prisoners, nothing in the record indicates that MCF-STW purposely

discriminated against Smith due to his race. Although Smith contends that the McComb affidavit displays "invidious[] discriminat[ion]," Smith does not cite to any explicit or implicit discriminatory purpose apparent within McComb's affidavit. In fact, the affidavit states that "STG content in magazines crosses all racial lines [and MCF-STW] does not categorize magazines by race." (McComb Aff. ¶¶ 23, 28.) The Court thus finds that the McComb affidavit does not demonstrate a discriminatory purpose.

The Court also finds nothing in the record, other than Smith's conclusory statements, to indicate that Defendants revised their policies because of an influx of allegedly African American publications.[11] Defendants contend that MN-DOC revised its policies in 2004 to streamline and consolidate them and because of the increased number of nude photographs. (*Id.* ¶ 5, Ex. B.) The Court finds no genuine issue of material fact regarding Smith's claim that there was a temporal connection between an influx of African American publications and the disputed policies. Accordingly, the Court will dismiss Smith's equal protection claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 58] and **ADOPTS** the Report

---

[11] McKay admits that there was an influx of nude pictures in the mail room around the time of the revised policies, but the record has no evidence regarding the race of the subjects of the photographs. (McComb Aff. Ex. B.) Even if the pictures were primarily sent to African American inmates, Smith has pointed to no evidence that Defendants enacted its policies due to a discriminatory purpose. *See Feeney*, 442 U.S. at 279 (holding that, to establish a discriminatory purpose, the decisionmaker must have chosen "a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."). McKay claims that the influx was the result of an increase in the number of vendors selling nude photos and that "[t]he 2004 policy revisions were not prompted by race." (McComb Aff. ¶¶ 6-7.)

and Recommendation of the Magistrate Judge dated January 25, 2012 [Docket No. 57]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Tom Roy is substituted for Joan Fabian;

2. Plaintiff's claims against defendants Eric Skon, Lynn Dingle, Joseph Cosgrove, James Benson, and Helene Haworth are **DISMISSED without prejudice**.

3. Defendants Anita Alexander, Joan Fabian, Mary Jiperez, John King, June Lind, Mary McComb, Leigh McCoy, and Dave Reishus' Motion to Dismiss and for Summary Judgment [Docket No. 38] is **GRANTED**.

4. Plaintiff's complaint is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 26, 2012  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge